UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| LEMUEL R. BELL,<br><br>Plaintiff,<br><br>vs.<br><br>MICHAEL MATTSON, Warden at Minnehaha County Jail in his official capacity; MINNEHAHA COUNTY JAIL; MEDICAL DEPT., Medical Provider at Minnehaha County Jail in official capacity; KARL E. THOENNES, III, Court Administrator, Second Judicial Circuit; and MEDICAL, Nursing Staff, Minnehaha County Jail,<br><br>Defendants. | 4:24-CV-04179-KES<br><br><br>ORDER GRANTING PLAINTIFF'S MOTIONS FOR LEAVE TO PROCEED IN FORMA PAUPERIS, DENYING PLAINTIFF'S OTHER VARIOUS MOTIONS, AND 1915A SCREENING |

Plaintiff, Lemuel R. Bell, filed a pro se civil rights lawsuit under 42 U.S.C. § 1983. Docket 1. He also filed an amended complaint. Docket 14. He moves for leave to proceed in forma pauperis and submitted certified copies of his prisoner trust account report. Dockets 2, 3, 5, 6, 12, 13. He also moves for the appointment of counsel (Docket 15), moves to expedite the proceedings (Docket 16), and moves to dismiss his state criminal cases (Docket 17).

**I.   Motions for Leave to Proceed In Forma Pauperis**

At the time Bell commenced this action and filed his motions for leave to proceed in forma pauperis, he was incarcerated at the Minnehaha County Jail. Docket 1 at 1; Docket 2 at 1; Docket 5 at 3; Docket 12 at 1. Before this court ruled on Bell's motions, he was released from custody. *See* Docket 18. *See also*

*Offender Search*, South Dakota Office of the Attorney General, https://savin.sd.gov/portal/Offender/OffenderDetail.aspx?OffenderGuid=3e9c8b1b-05f5-e511-bd90-005056890ba0 (last visited April 28, 2025) (listing Bell's release date as February 28, 2025).

Under the Prison Litigation Reform Act (PLRA), a prisoner who "brings a civil action or files an appeal in forma pauperis . . . shall be required to pay the full amount of a filing fee." 28 U.S.C. § 1915(b)(1). But circuit courts are split on whether the PLRA continues to apply after the prisoner is released during litigation. *See Carson v. Tulsa Police Dep't*, 266 F. App'x 763, 766–67 (10th Cir. 2008) (describing split in authority); *see also Domino v. Garland*, 2021 WL 1221188, at *1 n.3 (D. Minn. Apr. 1, 2021).

The Second, Fourth, and Sixth Circuits have held that, under the PLRA, "a prisoner is obligated to pay assessed fees and costs only while he or she remains incarcerated" and "[a]fter release, the obligation to pay the remainder of the fees is to be determined solely on the question of whether the released individual qualifies for pauper status." *In re Prison Litig. Reform Act*, 105 F.3d 1131, 1139 (6th Cir. 1997); *see also McGann v. Comm'r, Soc. Sec. Admin.*, 96 F.3d 28, 29–30 (2d Cir. 1996); *DeBlasio v. Gilmore*, 315 F.3d 396, 397 (4th Cir. 2003). By contrast, the Fifth, Seventh, and D.C. Circuits hold, based on the plain language of § 1915(b)(1), that a complainant must pay the full amount of the filing fee if the complainant was a prisoner when the action was commenced. *See Gay v. Tex. Dep't of Corr. State Jail Div.*, 117 F.3d 240, 241–42

(5th Cir. 1997); *Robbins v. Switzer*, 104 F.3d 895, 897–99 (7th Cir. 1997); *In re Smith*, 114 F.3d 1247, 1251 (D.C. Cir. 1997).

The Eighth Circuit has not expressly weighed in on this issue but the court's holding in *Tyler* is instructive. *See In re Tyler*, 110 F.3d 528, 529 (8th Cir. 1997). There, the court denied plaintiff's motion to proceed in forma pauperis and refused to address the merits of the plaintiff's mandamus petition until the requisite financial obligations were met. *Id.* at 529–30. The court explained that because the plaintiff had previously filed three improper actions, he was no longer eligible for a § 1915(b) installment plan. *Id.* at 529; *see also* 28 U.S.C. § 1915(g) (stating that a prisoner is not eligible for a reduced filing fee or an installment payment plan "if the prisoner has, on 3 or more prior occasions . . . brought an action . . . that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim"). As such, the court ordered the plaintiff to pay the filing fee in full, noting that "even if [plaintiff]'s petition is dismissed, [plaintiff] will still be assessed the full filing fee because the PLRA makes prisoners responsible for their filing fees the moment the prisoner brings a civil action or files an appeal." *Tyler*, 110 F.3d at 529–30.

Based on this language, courts within the Eighth Circuit have held that if a prisoner filed the action while in custody, the prisoner remains liable for the filing fee even if they are later released from custody. *See Domino*, 2021 WL 1221188, at *1 n.3 (stating that the "holding in *Tyler* that the fee obligation imposed by § 1915(b)(1) is triggered at the time the action is filed . . . is consistent with the conclusion that a complainant who filed an action when he

3

was a prisoner remains liable for the filing fee if he is subsequently released from custody"); *Counts v. Missouri*, 2025 WL 812276, at *3 (E.D. Mo. Mar. 13, 2025) (stating that, in light of the Eighth Circuit's decision in *Tyler*, the 1983 plaintiff was "responsible for the entire [filing] fee because the full fee was assessed against him prior to his release from custody"); *McFee v. Minnesota*, 2012 WL 514708, at *3 nn.5–6 (D. Minn. Jan. 24, 2012), *report and recommendation adopted,* 2012 WL 512611 (D. Minn. Feb. 15, 2012) (recognizing that the plaintiff must pay the filing fee, despite having been released from custody before the court ruled on the motion for in forma pauperis status); *Williams v. Doe #1*, 2006 WL 3804027, at *1 n.1 (E.D. Mo. Nov. 7, 2006) (noting "§ 1915(b)(1) continue[d] to apply" despite litigant's release). *But see Clark v. Wood*, 2021 WL 1873561, at *1 (E.D. Mo. May 10, 2021) (stating that if a plaintiff was released from custody before the court ruled on the in forma pauperis motion, the court will consider the motion under the non-prisoner standard in 28 U.S.C. § 1915(a)(1)). After applying the PLRA and *Tyler* to Bell, the court finds that because Bell filed this action while he was in custody, he is liable for the full filing fee. *See* 28 U.S.C. § 1915(b)(1).

Under the PLRA, however, the court may accept partial payment of the initial filing fee where appropriate. Thus, "[w]hen an inmate seeks pauper status, the only issue is whether the inmate pays the entire fee at the initiation of the proceedings or over a period of time under an installment plan." *Henderson v. Norris*, 129 F.3d 481, 483 (8th Cir. 1997) (alteration in original) (quoting *McGore v. Wrigglesworth,* 114 F.3d 601, 604 (6th Cir. 1997)).

4

The initial partial filing fee that accompanies an installment plan is calculated according to 28 U.S.C. § 1915(b)(1), which requires a payment of 20 percent of the greater of

> (A) the average monthly deposits to the prisoner's account; or
> (B) the average monthly balance in the prisoner's account for the 6-month period immediately preceding the filing of the complaint or notice of appeal.

Bell submitted three prisoner trust account reports. Dockets 3, 6, 13. His first prisoner trust account report shows an average monthly deposit of $36.45 and an average monthly balance of $2.81. Docket 3 at 1. His second prisoner trust account report shows an average monthly deposit of $30.72 and an average monthly balance of $3.04. Docket 6 at 1. His third prisoner trust account report shows an average monthly deposit of $29.43 and an average monthly balance of $9.03. Docket 13 at 1. After review of Bell's financial affidavits (Dockets 2, 5, and 12) and certified prisoner trust account reports (Dockets 3, 6, and 13), the court finds that he has insufficient funds to pay the filing fee. The court also waives Bell's initial partial filing fee because the initial partial filing fee would be greater than his current balance at the time of his filing the motions. *See* 28 U.S.C. § 1915(b)(4) ("In no event shall a prisoner be prohibited from bringing a civil action . . . for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee.").

In order to pay his filing fee, Bell must "make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account." 28 U.S.C. § 1915(b)(2). The statute places the burden on the prisoner's institution

5

to collect the additional monthly payments and forward them to the court as follows:

> After payment of the initial partial filing fee, the prisoner shall be required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. The agency having custody of the prisoner shall forward payments from the prisoner's account to the clerk of the court each time the amount in the account exceeds $10 until the filing fees are paid.

*Id.* The installments will be collected pursuant to this procedure. The Clerk of Court will send a copy of this order to the appropriate financial official at Bell's institution. Bell remains responsible for the entire $350 filing fee. *See Tyler*, 110 F.3d at 529–30.[1]

## II.    1915A Screening

### A.    Amended Complaint

Bell filed what he marked as his "First Amended Complaint[.]" Docket 14 at 1. Amended pleadings "relate to matters that occurred prior to the filing of the original pleading and entirely replace the earlier pleading[,]" but supplemental pleadings "deal with events subsequent to the pleading to be altered and represent additions to or continuations of the earlier pleadings." 6A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1504

---

[1] "As a practical matter, because [Bell] is no longer a prisoner as defined in 28 U.S.C. § 1915(h), the fee payment provisions of § 1915(b)(2) cannot be implemented at this time. Should [Bell] be a prisoner in the future, § 1915(b)(2) might then become applicable." *Domino*, 2021 WL 1221188, at *2 n.4; *see also McFee*, 2012 WL 514708, at *3 n.6 (stating that because the plaintiff was released, the fee payment provisions under § 1915(b)(2) cannot be utilized, but noting that if the plaintiff ever returns to custody by violating his terms of release or committing a new crime, § 1915(b)(2) will then become applicable).

(3d ed. 2024). A court may "permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d).

Bell's First Amendment Complaint adds facts that occurred after he filed his original complaint. *See* Dockets 1, 14. It is also clear from Bell's filings that he intended for Docket 14 to add to his original complaint, not to replace it entirely. *See* Docket 14 at 7 ("I want the court to pay for my cancer treatment in full or add five hundred thousand to my pending case # 4:24-CV-04179-KES."). Thus, this court will consider Docket 14 to be a supplemental complaint. For the sake of completeness, this court will consider Bell's original complaint, supplemental complaint, and supplements when screening under 28 U.S.C. § 1915A.

### B. Factual Background

On February 19, 2023, staff at the Avera Medical Center diagnosed Bell with cancer. Docket 1 at 4. In February 2024, when Bell was incarcerated at the Minnehaha County Jail, he asked about treatment for cancer. *Id.* Later in February 2024, Bell was transferred to the South Dakota State Penitentiary (SDSP). Docket 10 at 1. On February 23, 2024, the Minnehaha County Jail forwarded Bell's medical records to the SDSP. *Id.* The medical records showed that Bell had several nodes and masses in his throat, with one mass being over three inches long. *Id.* In April 2024, an ultrasound was performed, which confirmed the presence of masses. *Id.* A medical provider told Bell that he needed to have surgery to remove the masses upon his release from custody.

7

*Id.*; *see also* Docket 14 at 6 (alleging that the provider told Bell to have the masses removed as soon as possible, but claiming that Minnehaha County will not permit the removal of the masses or the release of Bell to arrange for removal).

On July 22, 2024, Bell returned to the Minnehaha County Jail. Docket 1 at 4. He informed medical staff that he had not received any medical treatment for his cancer or pain medication. *Id.* When he filed his original complaint, Bell had still not received medical treatment or pain medication. *Id.* Bell was scheduled to be seen by a gastroenterologist and an endocrinologist. *Id.*; Docket 7 at 2; Docket 9 at 2. But Minnehaha County Jail staff allegedly told Bell that he did not have cancer. Docket 1 at 4.

In October 2024, Bell developed a rash and skin infection that covered seventy-five percent of his body. Docket 14 at 5. He claims that his "skin is on fire and [his] whole body itches[.]" *Id.* He filed multiple medical sick call requests. *Id.* Bell was seen by medical staff twice for his skin condition, but they did not run any tests. *Id.* Medical staff took pictures of his skin but did not give him any medication. *Id.* Bell has scars all over his body because of the infected skin. *Id.*

Every thirty days since Bell was incarcerated in July 2024, he has filed motions for a bond hearing or a bond reduction in the Second Judicial Circuit of South Dakota. *Id.* at 4; *see also* Docket 11 at 1–2 (including a copy of one motion filed with the state court and listing the days Bell filed motions in state court). Bell had one bond hearing, and his other requests were unanswered.

Docket 14 at 4. Bell requested transcripts and records that were deleted by the circuit court clerk's office. *Id.* The clerk's office also denied his request for other records because Bell would be charged for them. *Id.* Bell appealed his state criminal case because of the missing records. *Id.* Bell claims that he was still incarcerated at the time he filed his supplemental complaint because his motions have not been filed and he has been blocked from accessing the courts. *Id.* In August and September, Bell filed a lawsuit against SDSP and Minnehaha County Jail. *Id.* at 6. Since Bell filed his lawsuit, he has had problems with court proceedings, bond motions, and medical help. *Id.*

Bell sues Minnehaha County Jail Warden Michael Mattson, Minnehaha County Jail Medical/Medical Department, and Second Judicial Circuit Court Administrator Karl Thoennes in their official capacities. *Id.* at 2; Docket 1 at 2. He also sues the Minnehaha County Jail and the Court Administrator's Office. Docket 1 at 1; Docket 14 at 1. Bell alleges that defendants violated his rights under the First, Eighth, and Fourteenth Amendments. Docket 1 at 4; Docket 14 at 4–6. In Bell's original complaint, he seeks $2.5 million for cancer treatment. Docket 1 at 7. In his supplemental complaint, Bell "want[s] the court to pay for [his] cancer treatment in full or add five hundred thousand to [his] pending case #4:24-CV-04179-KES[.]" Docket 14 at 7.

    **C.**    **Legal Background**

The court must assume as true all facts well pleaded in the complaint. *Est. of Rosenberg v. Crandell*, 56 F.3d 35, 36 (8th Cir. 1995). Pro se and civil rights complaints must be liberally construed. *Erickson v. Pardus*, 551 U.S. 89,

9

94 (2007) (per curiam) (citation omitted); *Bediako v. Stein Mart, Inc.*, 354 F.3d 835, 839 (8th Cir. 2004) (citation omitted). Even with this construction, "a *pro se* complaint must contain specific facts supporting its conclusions." *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985) (citation omitted); *see also Ellis v. City of Minneapolis*, 518 F. App'x 502, 504 (8th Cir. 2013) (per curiam) (citation omitted).

A complaint "does not need detailed factual allegations . . . [but] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). If it does not contain these bare essentials, dismissal is appropriate. *See Beavers v. Lockhart*, 755 F.2d 657, 663–64 (8th Cir. 1985) (citation omitted) (explaining that a district court does not err when it dismisses a claim based on vague allegations or unsupported generalizations). *Twombly* requires that a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true[.]" 550 U.S. at 555 (internal citation and footnote omitted); *see also Abdullah v. Minnesota*, 261 F. App'x 926, 927 (8th Cir. 2008) (per curiam) (noting that a "complaint must contain either direct or inferential allegations respecting all material elements necessary to sustain recovery under some viable legal theory" (citing *Twombly*, 550 U.S. at 554–63)).

Under 28 U.S.C. § 1915A, the court must screen prisoner complaints and dismiss them if they "(1) [are] frivolous, malicious, or fail[] to state a claim

upon which relief may be granted; or (2) seek[] monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b). The court will now screen Bell's complaint under 28 U.S.C. § 1915A.

### D. Legal Analysis

#### 1. Claims Against Minnehaha County Jail and Medical Department

Bell sues the Minnehaha County Jail and the Medical Department of the Minnehaha County Jail. Docket 1 at 1–2; Docket 14 at 1–2. "[C]ounty jails are not legal entities amenable to suit." *Owens v. Scott Cnty. Jail*, 328 F.3d 1026, 1027 (8th Cir. 2003) (per curiam); *see also De La Garza v. Kandiyohi Cnty. Jail*, 18 F. App'x 436, 437 (8th Cir. 2001) (per curiam); *Ketchum v. City of West Memphis*, 974 F.2d 81, 82 (8th Cir. 1992). The Minnehaha County Jail and its subdivisions are not suable entities under § 1983. Thus, Bell's § 1983 claims against the Minnehaha County Jail and its Medical Department are dismissed without prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii) and 1915A(b)(1).

#### 2. Claims Against Mattson

Bell sues Mattson in his official capacity as Warden of the Minnehaha County Jail. Docket 1 at 2. "A suit against a government officer in his official capacity is functionally equivalent to a suit against the employing governmental entity." *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010). Bell's official capacity claims against Mattson are equivalent to claims against Minnehaha County.

11

A county government may be sued only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy," deprives a plaintiff of a federal right. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *see also Clay v. Conlee*, 815 F.2d 1164, 1170 (8th Cir. 1987) (finding that "the [governmental] entity's official 'policy or custom' must have 'caused' the constitutional violation" in order for that entity to be liable under § 1983).

To establish governmental liability premised on an unofficial custom rather than an official policy, a plaintiff must allege facts to support a finding of "a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees" and "deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct[.]" *Brewington v. Keener*, 902 F.3d 796, 801 (8th Cir. 2018) (quoting *Corwin v. City of Independence*, 829 F.3d 695, 700 (8th Cir. 2016)). A § 1983 complaint does not need to "specifically plead the existence of an unconstitutional policy or custom to survive a motion to dismiss." *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004) (citing *Doe ex rel. Doe v. Sch. Dist. of City of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003)). But the complaint must still include some allegation, reference, or language that creates an inference that the conduct resulted from an unconstitutional policy or custom. *Id.*; *see also Doe*, 340 F.3d at 614 ("At a minimum, a complaint must allege facts which would support the existence of an unconstitutional policy or custom.").

Here, Bell has not alleged that Minnehaha County had a policy or custom that caused a violation of his rights. *See generally* Dockets 1, 14. Bell claims that Mattson "runs [the Minnehaha County Jail] and nothing happens without his ok[.]" Docket 1 at 2. Bell's complaint could be liberally construed to allege that Mattson is a policymaking official, but Bell does not indicate that there was a widespread pattern of misconduct or that Mattson—or any other policymaking official—was deliberately indifferent after notice of misconduct. *Id.* Thus, Bell's official capacity claims against Mattson are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).[2]

### 3.     Claims Against Court Administrator's Office

Bell sues the Court Administrator's Office of the Second Judicial Circuit of South Dakota. Docket 14 at 1. The Eleventh Amendment bars suit against a state entity, as opposed to a state official, regardless of whether money damages or injunctive relief is sought. *Cory v. White*, 457 U.S. 85, 90–91 (1982). In determining whether an entity is entitled to Eleventh Amendment immunity, the court examines the powers and characteristics of the entity that was created by state law to determine if it in reality is acting as the state, the degree of local autonomy and control exercised by the entity, and whether the

---

[2] Although Bell has not officially named individual medical providers as defendants, he attempts to sue medical providers and nursing staff employed in the Medical Department at the Minnehaha County Jail. Docket 1 at 2; Docket 14 at 2. Even if Bell had properly named them as defendants, his official capacity claims would still fail to state a claim upon which relief may be granted because he has not alleged an unconstitutional policy or custom that caused a violation of his rights.

funds to pay an award are derived from the state treasury. *Greenwood v. Ross*, 778 F.2d 448, 453 (8th Cir. 1985) (citing *Laje v. R.E. Thomason Gen. Hosp.*, 665 F.2d 724, 727 (5th Cir. 1982)).

The Court Administrator's Office is part of the Second Judicial Circuit. Docket 14 at 1–2. The Second Judicial Circuit is a state entity under South Dakota's judicial branch. S.D. Const. art. V §§ 1, 3, 11. Thus, the Court Administrator's Office is an arm of the State of South Dakota and is not subject to suit under § 1983. Bell's claims against the Court Administrator's Office are dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii–iii) and 1915A(b)(1–2).

### 4.      Claims Against Thoennes

Bell sues Thoennes in his official capacity as a court administrator with the Second Judicial Circuit. Docket 14 at 2. Clerk of court employees in the Second Judicial Circuit are employees of the State of South Dakota. S.D. Const. art. V § 11; *see also Archer v. Little*, 5:23-CV-05002-RAL, 2023 WL 3484166, at *6 n.4 (D.S.D. May 16, 2023). "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (citing *Brandon v. Holt*, 469 U.S. 464, 471 (1985)). Thus, it is a suit against the state itself. While "[§] 1983 provides a federal forum to remedy many deprivations of civil liberties, . . . it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties." *Id.* at 66.

14

The Eleventh Amendment generally acts as a bar to suits against a state for money damages unless the state has waived its sovereign immunity. *Id.* The State of South Dakota has not waived its sovereign immunity. Thus, Bell's claims for money damages against Thoennes in his official capacity are dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(iii) and 1915A(b)(2).

### E.  Filing an Amended Complaint

Bell may file an amended complaint clearly laying out the factual basis for his claims. Bell must file his amended complaint on or before **May 30, 2025.** If Bell files an amended complaint, he should specifically:

> (1) identify and name as a Defendant each individual who allegedly violated his constitutional rights; (2) explain how each individual personally violated his constitutional rights; (3) state in what capacity he is suing each Defendant (individual capacity, official capacity, or both); (4) identify his prisoner status at the time of the alleged unconstitutional conduct; (5) state the injury he suffered as a result of each Defendant's alleged unconstitutional conduct; and (6) state what relief he seeks from the Court.

*Gray v. Does*, 2023 WL 7381414, at *2 (E.D. Ark. Oct. 30, 2023). "[A]n amended complaint supercedes an original complaint and renders the original complaint without legal effect." *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 928 (8th Cir. 2005) (citing *In re Atlas Van Lines, Inc.*, 209 F.3d 1064, 1067 (8th Cir 2000)). Thus, any claims that Bell seeks to bring against all defendants must be included in an amended complaint.

### III.  Motion to Appoint Counsel (Docket 15)

Bell moves for the appointment of counsel. Docket 15. "A pro se litigant has no statutory or constitutional right to have counsel appointed in a civil

case." *Stevens v. Redwing*, 146 F.3d 538, 546 (8th Cir. 1998). When determining whether to appoint counsel to a pro se litigant, the court considers the "factual complexity of the case, the ability of the indigent to investigate the facts, the existence of conflicting testimony, the ability of the indigent to present his claim and the complexity of the legal issues." *Abdullah v. Gunter*, 949 F.2d 1032, 1035 (8th Cir. 1991) (citation omitted). All of Bell's claims were dismissed on screening. Even if he files an amended complaint, he has not currently alleged any claims that are legally or factually complex. Thus, Bell's motion to appoint counsel, Docket 15, is denied.

### IV.     Motion to Proceed (Docket 16)

Bell filed a motion to proceed at once. Docket 16. Bell also asks "if [he] can't get a court date now can [he] atleast [sic] get a hearing for summary judgement [sic][.]" *Id.* at 1. At this time, Bell's complaint is just being screened, and none of his claims survived § 1915A screening. Thus, Bell's motion to proceed, Docket 16, is denied as moot.

### V.     Motion to Dismiss State Criminal Cases (Docket 17)

Bell states that he "would like to file a motion to dismiss on case numbers; 49CRI23-008419; 49CRI23-002497; 49CRI22-007644; 49CRI22-008277; 49MAG22-003253 49CRI24-005278; All these cases are in violation of 180 day speedy trial." Docket 17 at 2. Bell states that the letter sent to this court "is a copy one sent to circuit clerk's office this is evidence of due process violation and access to the courts[.]" *Id.* It appears from Bell's filing that the document is filed as evidence, not as a motion. Even if this court liberally

16

construes his filing as a motion, his motion to dismiss his state criminal cases is denied.

It is unclear from Bell's filings whether all or some of his criminal cases are ongoing. *See* Docket 14 at 4 (indicating that his criminal case was appealed). If Bell's criminal cases were ongoing at the time he filed this lawsuit, this court should refrain from interfering in his criminal case. *See Younger v. Harris*, 401 U.S. 37, 43 (1971); *see also Harmon v. City of Kan. City*, 197 F.3d 321, 325 (8th Cir. 1999) (In *Younger*, "the Supreme Court advanced the position that federal courts should refrain from interfering with pending state judicial proceedings absent extraordinary circumstances. Under *Younger*, abstention is warranted if the action complained of constitutes the basis of an ongoing state judicial proceeding, the proceedings implicate important state interests, and an adequate opportunity exists in the state proceedings to raise constitutional challenges."). This court abstains from interfering in Bell's state criminal proceedings.

If Bell's criminal cases are closed, this court lacks jurisdiction under the *Rooker-Feldman* doctrine, which bars attempts by parties to undermine state court decisions. *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923). The doctrine recognizes that district courts, with the exception of habeas corpus petitions, "lack subject matter jurisdiction over challenges to state court judgments." *Ace Constr. v. City of St. Louis*, 263 F.3d 831, 832–33 (8th Cir. 2001) (citation omitted). Federal constitutional claims, like claims under 42 U.S.C. § 1983, are "inextricably

intertwined" with a state court judgment if the federal claim only succeeds "to the extent that the state court wrongly decided the issue." *Id.* at 833. For these reasons, Bell's Motion to Dismiss, Docket 17, is denied.

Thus, it is ORDERED:

1. That Bell's motions for leave to proceed in forma pauperis (Dockets 2, 5, and 12) are granted.

2. That the Clerk of Court will send a copy of this order to the appropriate financial official at Bell's institution.

3. That Bell's claims against the Court Administrator's Office are dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii–iii) and 1915A(b)(1–2).

4. That Bell's claims for money damages against Thoennes in his official capacity are dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(iii) and 1915A(b)(2).

5. That Bell's remaining claims are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

6. That Bell has until **May 30, 2025**, to file an amended complaint. Failure to do so will result in dismissal of his case.

7. That Bell's Motion to Appoint Counsel (Docket 15) is denied.

8. That Bell's Motion to Proceed (Docket 16) is denied.

9.	That Bell's Motion to Dismiss (Docket 17) is denied.

Dated April 30, 2025.

                                BY THE COURT:

                                /s/ *Karen E. Schreier*
                                KAREN E. SCHREIER
                                UNITED STATES DISTRICT JUDGE

19